UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ELEPCIA HERNANDEZ,

                     Plaintiff,

              v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
21-CV-5405 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Elepcia Hernandez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) alleging the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") erroneously denied Plaintiff's application for Supplemental Security Income ("SSI"). Plaintiff and Defendant both move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 25, 28. For the reasons to follow, Defendant's motion is GRANTED, Plaintiff's motion is DENIED, and the Court AFFIRMS the determination of the Social Security Administration.

## BACKGROUND

On July 11, 2017, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging a disability onset date of August 30, 2015. Administrative Record ("Tr."), ECF No. 27, at 59. After her claim was denied, Plaintiff requested an administrative hearing. *Id.* at 112-42. On March 12, 2019, Plaintiff appeared with counsel at a hearing and testified before Administrative Law Judge ("ALJ") Ifeoma N. Iwuamadi. *Id.* at 84-111.

Plaintiff requested review by the Appeals Council, which was denied on May 19, 2020. *Id.* at 41-44. The Commissioner took no further action. Therefore, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final decision. It does so now.

## STATEMENT OF FACTS

The evidence in this case is undisputed, and the Court adopts Defendant's factual recitation. Def. Mem. at 8-16, ECF No. 28-1.

## APPLICABLE LAW

### I.  Standard of Review

When a claimant challenges a denial of disability benefits by the Social Security Administration ("SSA"), the court's function is not to evaluate *de novo* whether the claimant has a disability but rather to determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla"—it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation omitted). The reviewing court must examine the entire record, weighing the evidence on both sides to ensure the claim "has been fairly evaluated." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

The Commissioner, not the courts, "weigh[s] the conflicting evidence in the record" and resolves such conflicts. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). "While the ALJ need not resolve every conflict in the record, the crucial factors in any determination must be set forth with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F. Supp. 2d 250, 268–69 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation and alterations omitted). To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his

ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F. Supp. 2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F. Supp. 2d at 269).

## II.  Eligibility for Disability Benefits

To be eligible for SSI benefits, an individual must be "aged, blind, or disabled" as defined in 42 U.S.C. § 1382c and, *inter alia*, meet the resource and income limits specified in the Act. For purposes of SSI, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

To evaluate a disability claim, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 416.920. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If not, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 416.920(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step requires the Commissioner to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform their past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the

fifth and final step is to determine whether the claimant can perform any job based on his or her RFC and other vocational considerations, such as work experience, age, and education. *Id.* § 416.920(a)(4)(v). The claimant bears the burden of proving the first four steps, then the burden shifts to the Commissioner at the fifth step. *Rosa v. Callahan*, 168 F.3d 72, 77-78 (2d Cir. 1999).

### III.   Evaluation of Medical Opinion Evidence

In making a disability determination, "[t]he ALJ will consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, 13-CV-3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (Brodie, J.) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012) (summary order)). When there is conflicting evidence in the record, courts defer to the ALJ's resolution of those conflicts. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). The ALJ shall evaluate every medical opinion on record, although they are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of medical source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). Moreover, the ALJ need not seek additional information "where there are no obvious gaps in the administrative record." *Rosa*, 168 F.3d at 79 n.5.

## DISCUSSION

On April 10, 2019, ALJ Iwuamadi issued a decision denying Plaintiff's claim. *Id.* at 52-67. First, the ALJ determined Plaintiff did not engage in substantial gainful activity since August 30, 2015, the alleged disability onset date. *Id.* at 57. Second, the ALJ found Plaintiff had medically determinable impairments including: "lumbar spine derangement status post-surgery, lumbar radiculopathy, obesity status post-gastric bypass surgery, status post hysterectomy,

4

bilateral hip arthrosis, cervical spine degeneration, carpal tunnel syndrome, hypertension, gastritis, and status post-shoulder surgery." *Id.* However, the ALJ found, upon reviewing the record, Plaintiff does not have a severe impairment or combination of impairments. *Id.* at 60. The ALJ found Plaintiff could perform sedentary work as defined in the regulations, except that she was limited to ambulating with a cane; frequent reaching around, handling, and fingering; occasional stooping, climbing ramps and stairs, and overhead reaching; and no kneeling, crouching, or crawling. *Id.* at 61. At step four, the ALJ determined Plaintiff could not perform her past work as a delivery driver and babysitter. *Id.* at 66. Finally, at step five, the ALJ determined, considering Plaintiff's RFC and vocational factors, and considering the testimony of the vocational expert, Plaintiff was capable of performing other unskilled sedentary work existing in significant numbers in the national economy. *Id.* at 66-67. Therefore, the ALJ determined Plaintiff was not disabled. *Id.* at 67.

Plaintiff argues the ALJ's decision should be remanded for further proceedings for two reasons. First, Plaintiff argues the ALJ failed to adequately develop the record because "she neglected to make reasonable efforts to secure a medical source statement from any of [Plaintiff's] treating sources." Plaintiff's Brief ("Pl. Br.") at 2, ECF No. 26. Second, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly relied on unreliable vocational expert testimony. *Id.* Defendant, on the other hand, argues the ALJ's determination should be affirmed because it was supported by substantial evidence. Defendant's Brief ("Def. Br.") at 20, ECF No. 28-1. For the following reasons, the Court agrees with Defendant and finds the ALJ's decision correctly applied the legal standards and is supported by substantial evidence.

5

### I. The ALJ Adequately Developed the Record

Before considering whether the ALJ's decision is supported by substantial evidence, the Court "must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Scott v. Astrue*, 09-CV-3999, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (Matsumoto, J.). As the nature of social security proceedings is "inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000), ALJs have "regulatory obligations to develop a complete medical record before making a disability determination." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). This obligation applies even when a claimant is represented by counsel. *Id.*

"Prior to [the] elimination of the treating physician rule,[1] as part of their duty to develop the record, ALJs were required to obtain an opinion from the claimant's treating physician[s], and courts frequently remanded cases where ALJs failed to do so." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 163 (S.D.N.Y. 2022) (Lehrburger, J.). However, courts "do[] not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's determination." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015). Instead, as the Second Circuit clarified in *Tankisi v. Comm'r of Soc. Sec.*, an ALJ's failure to request opinions from a treating physician does not require remand if "the record contains sufficient evidence from which the ALJ can assess the [claimant's] [RFC]." 521 F. App'x 29, 33-34 (2d Cir. 2013). Under this standard, "the need for a medical source statement from the treating physician hinge[s] 'on [the] circumstances of the particular case, the comprehensiveness

---

[1] For disability claims filed prior to March 27, 2017, ALJs were required to apply the "treating physician rule." *Adams v. Saul*, 20-CV-818 (RPK), 2023 WL 3663017, at *7 (E.D.N.Y. May 25, 2023) (Kovner, J.) (quoting *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022). The treating physician rule requires controlling weight to be afforded to the opinion of a claimant's treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record.'" *Russ*, 582 F. Supp. at 163 (quoting *Sanchez v. Colvin*, 13-CV-6303, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (Freeman, M.J.)).

While the Second Circuit has not directly addressed the impact of the new regulations concerning treating physician, "*Tankisi* suggests that the rule it sets out would remain unaffected." *Angelica M. v. Saul*, 20-CV-727 (JCH), 2021 WL 2947679, at *6 (D. Conn. July 14, 2021) (Hall, J.). The *Tankisi* court "valued medical source statements because they afforded physicians the opportunity to explicitly assess the claimant's limitations and RFC" but did not consider them necessary in every case. *Id.* Thus, it follows that "remand for failure to develop the record by obtaining a particular medical source statement depends on the circumstances of the case and will only be required if the record does not otherwise 'contain[] sufficient evidence from which an ALJ can assess the [claimant's] [RFC].'" *Id.* at 34. (citing *Tankisi*, 521 F. App'x at 34).

Plaintiff claims the ALJ had an obligation to contact and obtain medical source statements from three of Plaintiff's treating physicians, including Dr. John Michalisin, Dr. Kamini Shah, and Dr. Elizabeth Agopian. Pl. Br. at 15. Plaintiff also argues the ALJ was required to "request a medical source statement from a treating source before resorting to sending the claimant for a consultative examination." *Id.* The ALJ had no such obligation here.

Where there are "meaningful gaps" in the record, such that an ALJ lacks sufficient information to assess a claimant's RFC, the ALJ may be obligated to obtain medical source statements to fill the gap. *Angelica M.*, 2021 WL 2947679, at *9 (remanding and directing ALJ to seek updated medical source statement from a claimant's treating therapist and treating physician because there were significant gaps the medical source statements in the record did not

7

fill). However, where, as here, the plaintiff has failed to demonstrate there are any such gaps in the record—let alone persuasively counter the claim the record was sufficiently comprehensive for the ALJ to make a determination as to Plaintiff's RFC—the court has no basis upon which to assert this obligation.

The ALJ possessed Plaintiff's treatment records dating back to 2011. Tr. at 361-81. Additionally, the ALJ considered mental and physical functional assessments by multiple examining and non-examining physicians, including those performed by Dr. Iqbal Teli, Dr. Toula Georgiou, and Dr. G. Feldman. With respect to Plaintiff's hyperlipidemia and diabetes mellitus, the ALJ considered an internal medicine examination performed by Dr. Teli which supported the conclusion that Plaintiff's conditions were under control. *Id.* at 62. Moreover, this determination was corroborated by treatment notes prepared by Dr. Saji Abraham in November 2017. *Id.* at 1235-36.

The ALJ also considered a variety of medical evidence concerning Plaintiff's lumbar spine and cervical spine impairments, including Plaintiff's treatment history dating back to 2016. *Id.* at 66. The ALJ noted Plaintiff received several rounds of epidural steroid injections which provided only temporary relief, and that the "internal medicine examination continued to show restricted range of motion in the lumbar spine." *Id.* However, as the ALJ recounted, Plaintiff's treatment notes indicated "[Plaintiff] had been walking and engaging in activities of daily living and that, as recently as 2018 had shown significant improvement." *Id.* Plaintiff's treatment notes also indicated she did not have "any significant disk herniation, canal stenosis or significant foraminal stenosis." *Id.* at 67. Dr. Mark Eisenberg, a neurosurgeon who evaluated Plaintiff in November 2018, reported she had "normal motor strength" and normal sensation in her "arms, legs and trunk[,]" and did not recommend surgical intervention. *Id.*

The ALJ also considered medical records prepared by Dr. Michalisin, including an x-ray taken in February 2018 which "showed bilateral hip arthrosis." *Id.* at 67. While the ALJ found this evidence consistent with Plaintiff's reports of hip pain, medical examinations contradicted the extent of Plaintiff's alleged limitations. *Id.* This included a medical examination performed in October 2018 which "revealed no joint pain, swelling or deformity and no limitation of movement in the musculoskeletal system." *Id.* at 68.

The ALJ also considered medical records prepared by Dr. Shah. *Id.* at 67. Namely, the ALJ referenced a report Dr. Shah prepared in December 2018, in which Plaintiff "report[ed] being in good health" and "denie[d] visual disturbances, dyspnea, chest pain, motor or sensory disturbances or systemic symptoms." *Id.* at 1156. Under these circumstances, the ALJ did not have "any further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians." *Rodriguez v. Colvin*, 14-CV-1129 (GLS), 2016 WL 447715, at *7 (N.D.N.Y. Feb. 4, 2016) (Sharpe, J.).

Plaintiff briefly argues the ALJ "fail[ed] to account for [Plaintiff's] iron deficient anemia or Lupus," and maintains this alone demonstrates the record was not adequately developed. Pl. Br. at 16. However, it is well established that "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). Furthermore, an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

IV. **The Vocational Expert's Testimony Supports the ALJ's Finding That Plaintiff Could Perform a Significant Number of Jobs in the National Economy**

The ALJ determined, as of the date last insured, there were jobs that existed in significant numbers in the national economy Plaintiff could perform, including as an addresser, document

9

preparer, and call-out operator. Tr. at 71. In so doing, the ALJ relied upon vocational expert testimony. *Id.* at 66-67. Plaintiff argues the ALJ erred in relying upon the vocational expert's testimony because (1) two of the jobs the vocational expert identified require "frequent overhead reaching," which the ALJ concluded is not possible for Plaintiff, and (2) the final job does not exist in significant numbers in the national economy. Pl. Br. at 17, 20.

At step five, the Commissioner has the burden of "show[ing] that there is work in the national economy that the claimant can do" in light of the claimant's RFC. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). In so doing, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence ... and accurately reflect the limitations and capabilities of the claimant involved." *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).

The Dictionary of Occupational Titles ("DOT"), published by the Department of Labor, describes the requirements for various jobs. *See* 20 CFR § 416.966 (d)(1). SSA Policy Interpretation Ruling 00-4p, which "governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations," *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019), provides "[o]ccupational evidence provided by a [vocational expert]...generally should be consistent with" the DOT. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). In the event of an apparent conflict between the DOT and vocational expert testimony, the ALJ must obtain a reasonable explanation for the discrepancy. *Lockwood*, 914 F.3d at 92.

The ALJ's duty to resolve conflicts between these two sources is satisfied if the ALJ questions the expert about the conflict and the expert provides a resolution, including by drawing upon their professional experience. *See Sharone D. P. v. Comm'r of Soc. Sec.*, 21-CV-1030

(GRJ), 2023 WL 1966179, at *4 (S.D.N.Y. Feb. 13, 2023) (Jones, J.) (finding the ALJ's duty to inquire was satisfied where the ALJ specifically asked the vocational expert about the issue and the expert proceeded to resolve the conflict based on their professional experience); *see also Arias v. Kijakazi*, 623 F. Supp. 3d 277, 296 (S.D.N.Y. 2022) (Lehrburger, J.) (finding the ALJ made an appropriate inquiry and obtained a reasonable explanation by asking the ALJ about the apparent conflict and expressly addressing that conflict and its resolution in the final decision).

Here, the ALJ addressed the conflict and obtained a reasonable explanation from the vocational expert. The ALJ asked the vocational expert if her testimony was consistent with the DOT. Tr. at 110. The vocational expert responded: "Yes, and the DOT does not address the use of an assistive device and reaching in specified directions. That is from my professional experience, education, and training." *Id.* This colloquy is "sufficient to satisfy the duty of inquiry recognized by the Second Circuit in *Lockwood*." *Sharone D. P.*, 2023 WL 1966179, at *4.

Plaintiff's final argument, that the ALJ improperly found the job of call-out operator exists in significant numbers in the national economy, is also unavailing. Pl. Br. at 20. As an initial matter, ALJs are entitled to give credit to vocational expert testimony "given on the basis of the expert's professional experience and clinical judgement, and which was not undermined by any evidence in the record." *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014). Plaintiff did not challenge the vocational expert's assessment at the administrative hearing, and Plaintiff has not otherwise alleged that there was any evidence in the record to contradict the vocational expert's assessment.

Neither the SSA nor the Commissioner regulations "provide a definition for a 'significant' number of jobs." *Dianne H. v. Kijakazi*, 21-CV-06235-GRJ, 2022 WL 17251583,

at *7 (S.D.N.Y. Nov. 28, 2022) (Jones, M.J.) (citation omitted). However, Courts have generally found the "significant number" threshold is 'fairly minimal'" and the quantity of each individual type of job may be aggregated for these purposes. *Id.* (quoting *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015) (Suddaby, J.)). Courts in this Circuit routinely find that national numbers above 9,000 are "significant." *Dianne H.*, 2022 WL 17251583, at *8 ("[A] total number over 17,000 is sufficient to satisfy the Commissioner's step five burden."); *see also Mota v. Comm'r of Soc. Sec.*, No. 20-CV-07294 (SN), 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022) (Netburn, M.J.) (finding a total number of 9,600 jobs was sufficient).

The vocational expert identified there are 8,000 address jobs, 46,000 document preparer jobs, and 10,000 call-out operator jobs in the national economy. Tr. at 109. Even without aggregating these individual figures, the call-out job certainly satisfies the significant threshold number. Thus, the Court finds the ALJ properly relied upon the vocational expert testimony and further that the ALJ's determination at step five is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings, ECF No. 28, is GRANTED and Plaintiff's motion for judgment on the pleadings, ECF No. 25, is DENIED. The Court hereby AFFIRMS the decision of the Social Security Administration. The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 27, 2023
Brooklyn, New York